# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40580

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2019

Lyle W. Cayce
Clerk

JOHNNETTA PUNCH,

      Plaintiff-Appellant,

v.

JIM BRIDENSTINE, in his official capacity as Administrator, National Aeronautics and Space Administration; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, (NASA); MARK GEYER, in his official capacity as Director, National Aeronautics and Space Administration,

      Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, HO, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:

Johnnetta Punch says the National Aeronautics and Space Administration ("NASA") discriminated against her. She pursued her claims before numerous tribunals—none of which found any discrimination or other violation of law. But the merits of her allegations are not before us. The issue here is procedural. We must decide whether Punch pled her way out of federal court by attempting to litigate her claims in several mutually exclusive forums. The district court said yes. We agree.

No. 18-40580

I.

When a federal employee challenges an adverse employment action, such as termination, a "complicated tapestry" of statutes and regulations governs her claim. *Butler v. West*, 164 F.3d 634, 637 (D.C. Cir. 1999). We think the better metaphor is a road. But this trip is not for the easily carsick.

The Civil Service Reform Act ("CSRA") gives federal employees numerous job protections. One is the right to challenge certain "serious personnel actions." *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1979 (2017). The employee "may merely allege that the agency had insufficient cause for taking the action under the CSRA." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). The employee "may also or instead charge the agency with discrimination prohibited by another federal statute." *Ibid.* This second type of charge is called a "mixed case." *Ibid.* (citing 29 C.F.R. § 1614.302).

Under the CSRA, employees face a series of mutually exclusive paths to bring a "mixed case." Option 1 is an appeal to the Merit Systems Protection Board ("MSPB"). The MSPB is "an independent adjudicator of federal employment disputes" that hears appeals from "particularly serious" actions, such as terminations of employment. *Ibid.*

After the MSPB decides a mixed case, the road forks again. The employee has three options for further review. First (Option 1.A), she can appeal to the Federal Circuit—but only if she waives her discrimination claims and limits her appeal to CSRA claims. 5 U.S.C. § 7703(b)(1). If she chooses Option 1.A, she must file her appeal within 60 days of the MSPB's decision. *Id.* § 7703(b)(1)(A).

Second (Option 1.B), the employee can instead keep pursuing her mixed case. But the road for review forks once again. The employee can immediately file suit in the appropriate federal district court (Option 1.B.i). *Id.* § 7703(b)(2). Or the employee can take a further administrative appeal to the EEOC (Option

No. 18-40580

1.B.ii).  *Id.* § 7702(b)(1).  And if she's unhappy with the EEOC's resolution, the employee can sue in district court.  *Id.* §§ 7702(b)(3)(A), (b)(5)(A), (b)(5)(B), (c), 7703(b)(2); *see Perry*, 137 S. Ct. at 1980.  Thus, both of these options (1.B.i and 1.B.ii) allow the employee to continue pursuing discrimination claims as part of her mixed case, and both eventually lead to litigation in district court.  The employee's deadline to file a complaint in district court is 30 days from the final decision by the relevant administrative body—either the MSPB or the EEOC, depending on the route she chooses.  *See* 5 U.S.C. § 7703(b)(2).

But the employee need not start with the MSPB—or take any of the roads running from it.  There's another way.  Call it Option 2.  An employee can file a mixed case complaint with the agency's Equal Employment Opportunity ("EEO") office.  29 C.F.R. § 1614.302(b); *see also Kloeckner*, 568 U.S. at 45.  If the agency's EEO office rules against the employee, she can appeal to the EEOC.  When the EEOC's decision becomes final and reviewable, she can challenge it in district court.  *See* 29 C.F.R. § 1614.407.  So Option 2, like Options 1.B.i and ii, eventually leads to district court.

## II.

We turn now to Punch's case.  In early 2013, Punch worked as a Program Analyst at NASA.  On March 4, 2013, her supervisors gave her a "notice of unacceptable performance" and placed her on a "performance improvement plan."  The plan required her to successfully complete certain tasks within her general job duties.

The plan did not go well for Punch.  She received an "unacceptable" rating on her 2012–2013 performance review.  So in June 2013, Punch's supervisor recommended her employment be terminated.  NASA terminated her on August 7, 2013.

Punch alleged that NASA discriminated against her on the basis of race, color, sex, and age (among other things).  She also alleged NASA discriminated

No. 18-40580

against her by placing her on the performance improvement plan, conducting the plan, and terminating her employment. She also alleged her termination violated the CSRA. In other words, she had a "mixed case." As described above, Punch had several paths to seek review of her mixed case. But instead of choosing *one* path, Punch tried to choose *all* of them. First Punch chose Option 1. Then she tried to choose Option 2. But then she lost Option 1—so she tried to choose Option 1.A. and 1.B. Procedural chaos ensued.[1]

### A.

We start, as Punch did, with Option 1. On September 5, 2013, Punch timely appealed her termination to the MSPB. She argued that NASA violated the CSRA by failing to provide the necessary resources and support to complete the improvement plan, that the same failures were discriminatory, and that the whole thing was retaliation for discrimination complaints she had submitted to NASA in the past.

The MSPB affirmed NASA's decision. The MSPB's decision letter instructed Punch that she had two options for pursuing her mixed case. She could pursue all of it (both the CSRA claims and the discrimination claims) in the district court (Option 1.B.i). Or she could appeal to the EEOC (Option 1.B.ii). The MSPB also informed her that either filing would need to be made within 30 days of Punch's receipt of the decision letter. Punch received the letter on February 9, 2016, so her deadline to file in district court or appeal to the EEOC was March 10, 2016.

Ultimately, Punch chose neither option. She instead purported to drop the discrimination claims and to pursue only her CSRA claims in the Federal Circuit (Option 1.A). She filed her petition for review on April 5, 2016. Her

---

[1] This is a long and winding road. A chronology of events is set out in the Appendix, *infra*. It gives new meaning to the phrase "administrative exhaustion."

No. 18-40580

petition did not purport to press a mixed case. Indeed, Punch submitted a form to the Federal Circuit certifying that "[n]o claim of discrimination by reason of race, sex, age, national origin, or handicapped condition has been or will be made in this case." All of that makes sense because the Federal Circuit has jurisdiction to review only CSRA claims. So far so good, right?

B.

Not so fast. Three months *after* Punch chose Option 1 by appealing to the MSPB, she *also* purported to choose Option 2. On December 9, 2013, Punch also filed a discrimination complaint with NASA's EEO office. As pertinent here, Punch alleged (1) she received an "unacceptable" performance rating, (2) her request for reassignment was denied, (3) she was "denied official time to work on [a] prior EEO complaint," and (4) her supervisor proposed that Punch's employment be terminated.

Punch's complaint was handled by NASA's Office of Diversity and Equal Opportunity ("ODEO"). NASA ODEO declined to consider allegation (4) because the termination itself had already been appealed to the MSPB. But it allowed three other allegations to go forward through the EEO process (Option 2):

> 1) On June 6, 2013, you received an "unacceptable" rating for your 2012-2013 appraisal due to your supervisor's denial of your request for additional resources (snag-it CD, sit/stand workstation, lightweight laptop computer) that would have enabled you to perform your job more effectively.
>
> 2) On June 19, 2013, your request for a reassignment and/or modification to your scope of work was denied.
>
> 3) On July 8, 2013, you were denied official time to work on your prior EEO complaint, Agency Docket No. NCN-13-JSC-00025.

Ultimately, NASA ODEO found no discrimination.

5

No. 18-40580

Punch appealed NASA ODEO's final decision to the EEOC. Regulations provide that if the EEOC has not issued a final decision on such an appeal within 180 days, the claimant can file suit in the appropriate federal district court. 29 C.F.R. § 1614.407(d). That deadline passed without an EEOC decision. So on May 17, 2016, Punch filed an Option 2 lawsuit in the Southern District of Texas that's based, she contends, solely on her NASA EEO complaint. If governed by the 30-day deadline for seeking judicial review of an EEOC action, the complaint was timely. *See* 5 U.S.C. § 7703(b)(2); 29 C.F.R. § 1614.407(d).

The Option 2 complaint alleges Punch was denied the resources she needed to complete the improvement plan, such as computer software and training, and that NASA "retaliated against Plaintiff by giving her an unacceptable rating on her 2012-2013 performance appraisal, proposing her removal from the Agency on June 6, 2013, and refusing to allow her to transfer to another manager." It also alleges she "was retaliated against by being placed on a Plan and eventually removed from her position" because of her prior EEOC complaints.[2]

## C.

Punch's Option 2 complaint prompted NASA to move to dismiss her Option 1.A appeal to the Federal Circuit. That's when things really veered into the ditch.

---

[2] Adding to the procedural complexity and confusion of Punch's multi-pronged litigation strategy, she actually filed *two* EEO complaints. Punch filed the first in March 2013—before her termination—and it's docketed under the number NCN-12-JSC-00025. The parties call this the "EEO-25 Complaint." Punch filed the second in December 2013—after her termination—and it's docketed under the number NCN-13-JSC-00062. The parties call this the "EEO-62 Complaint." The district court dismissed the EEO-25 Complaint, and Punch did not appeal that dismissal. Her failure to appeal the dismissal of the EEO-25 complaint forfeits it as a basis for relief. *See Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019). Therefore, throughout this opinion, we refer to the EEO-62 complaint as Punch's Option 2 complaint.

No. 18-40580

In her opposition to NASA's motion to dismiss, Punch revealed that she *also* purported to pursue Option 1.B.ii by appealing her mixed case from the MSPB to EEOC.  As Punch told it in her opposition:

- On March 8, 2016, Punch appealed her mixed case from the MSPB to the EEOC (Option 1.B.ii);
- On April 5, 2016, Punch petitioned for review in the Federal Circuit (Option 1.A); and
- On May 17, 2016, Punch filed her complaint in the Southern District of Texas (Option 2).[3]

The Option 1.B.ii appeal was news to the federal government, apparently, because the EEOC never acknowledged it.  It also was a problem for Punch because if her mixed case was properly filed before the EEOC under Option 1.B.ii, then she'd lose her Option 1.A appeal before the Federal Circuit *and* her Option 2 suit before the Southern District of Texas.  Again, the three paths are mutually exclusive.  So Punch and NASA stipulated to the Federal Circuit that Punch "never formally filed an appeal from the MSPB to" the EEOC.  Based on that stipulation, the parties agree Punch's Option 1.B.ii election was a nullity.[4]

Of course, that does not ameliorate this procedural car wreck because the Southern District of Texas suit (Option 2) provided an independent jurisdictional problem for Punch's Federal Circuit appeal (Option 1.A).  NASA told the Federal Circuit that Punch was continuing to pursue discrimination complaints arising from the same facts in the district-court lawsuit, so she hadn't really waived her discrimination claims (as is necessary to invoke

---

[3] Again, please see the roadmap in the Appendix, *infra*.

[4] That stipulation did not stop the EEOC, however.  On March 7, 2017, it issued a decision anyway and concurred with the MSPB that NASA did not discriminate against Punch.  Punch has not, to our knowledge, appealed that decision.

No. 18-40580

Federal Circuit review).  Noting the overlap between the appeal before it and the district-court complaint, the Federal Circuit agreed:

> Since Ms. Punch has not abandoned her discrimination claim we have no authority over the [MSPB]'s decision. In *Williams v. Department of Army*, 715 F.2d 1485 (Fed. Cir. 1983), we rejected the notion that an employee could pursue the personnel action and the discrimination claim in separate fora. We recognized that "Congress did not direct or contemplate bifurcated review" of mixed cases because claims of adverse action and discrimination "will be two sides of the same question and must be considered together."
>
> . . . The basic premise of *Williams*—that a petitioner cannot challenge the nondiscrimination issues here while challenging the discrimination issues in district court—is the precise situation that has been created by Ms. Punch's separate filings.

*Punch v. NASA*, No. 16-1804, slip op. at 3–4 (Fed. Cir. Apr. 26, 2017) (citation omitted).  So the Federal Circuit transferred Punch's appeal to the district court, where the two cases (Option 1.A and Option 2) were consolidated.

Magistrate Judge Edison issued a careful report and recommendation ("R&R") that analyzed Punch's various claims in their various procedural postures.  Judge Edison found that Punch's Option 1.A appeal to the Federal Circuit and her Option 2 complaint in district court related to "the same matter" under 29 C.F.R. § 1614.302(b).  Therefore, her Option 1.A appeal required that her Option 2 complaint "be dismissed as a matter of law."  R&R at 16.  Then Judge Edison held the rest of Punch's claims were untimely.  *Ibid.*  Therefore, the magistrate judge recommended summary judgment for the defendants and the dismissal of Punch's claims.  The district court adopted the R&R and dismissed the case.  Punch timely appealed.  And that, at long last, brings the case to us.

No. 18-40580

III.

Punch faced two crossroads. At both, her choice of one path excluded her choice of the other. But both times, she attempted to have it both ways. We hold that Punch's refusal to pick one path and stick to it requires dismissal of her appeals.

A.

Punch's first crossroads was her choice between Option 1 (an MSPB appeal) and Option 2 (an EEO complaint with NASA ODEO). *See* 5 U.S.C. § 7702(a)(1), (2); 29 C.F.R. § 1614.302(a). The applicable federal regulation requires the employee to elect one or the other, but not both: "whichever is filed first" (Option 1 or Option 2) "shall be considered an election to proceed in that forum." 29 C.F.R. § 1614.302(b). We have called the election "irrevocabl[e]." *Devaughn v. U.S. Postal Serv.*, 293 F. App'x 276, 281 (5th Cir. 2008) (per curiam). Other courts have called it "binding." *Economou v. Caldera*, 286 F.3d 144, 149 (2d Cir. 2002). By whatever name, it's preclusive of the unchosen option: Once the employee sets out along one route, she must "exhaust [her] remedies in th[e chosen] forum." *Devaughn*, 293 F. App'x at 280 (citing *Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990) (per curiam)); *see also Casimier v. U.S. Postal Serv.*, 142 F. App'x 201, 204 (5th Cir. 2005) (per curiam). Her choice at the start really matters.

Punch chose Option 1. She pursued her mixed case—both her CSRA claims and her discrimination claims—before the MSPB. After the MSPB rejected her mixed case, she *could* have sought review in federal district court (Option 1.B.i). *See* 5 U.S.C. § 7703(b)(2); 5 C.F.R. § 1201.175; 29 C.F.R. § 1614.310(b). What she could *not* do is go back to the first fork in the road and choose Option 2 by filing an EEO complaint. Once she chose Option 1, federal law required her to follow that road to the end. There are no U-turns.

9

No. 18-40580

Punch says that all of this is NASA ODEO's fault. NASA ODEO severed from Punch's Option 2 complaint those portions of her allegations that were pending before the MSPB in her Option 1 appeal, then adjudicated the rest. And in her view, NASA ODEO's decision to do so makes all of her claims reviewable here. Punch thus contends she could not make a wrong turn because NASA ODEA was at the wheel.

We disagree for two reasons. First, Punch filed her Option 2 EEO complaint three months after she filed her Option 1 MSPB appeal. That makes the former a legal nullity insofar as they both concern "the same matter." 29 C.F.R. § 1614.302(b); *see Devaughn*, 293 F. App'x at 281. And we have no doubt that Punch's Option 2 EEO complaint and Option 1 MSPB appeal involve "the same matter." We agree with the magistrate judge, who conducted a rigorous, thorough, and careful analysis of Punch's Option 1 MSPB appeal and her Option 2 EEO complaint. The magistrate judge even produced a detailed, two-page table comparing the allegations in the two pleadings. The two proceedings involve "the same matter."

Second, NASA is not somehow estopped from challenging Punch's bifurcation, even though NASA's ODEO mistakenly adjudicated part of her Option 2 complaint. We've previously rejected this sort of estoppel-by-mistake argument. *See Devaughn*, 293 F. App'x at 281–82. We do so again today. The district court correctly entered judgment as a matter of law on the Option 2 EEO complaint.

B.

Punch reached her second crossroads after the MSPB rejected her "mixed case." She could've dropped her mixed case and pursued only the CSRA claim before the Federal Circuit (Option 1.A); pursued the mixed case in federal district court (Option 1.B.i); or pursued the mixed case in the EEOC (Option 1.B.ii). Federal law allowed her to pick only one of these options—but

she tried to choose all three.  That choice had three consequences.  First, Punch deprived any court of subject-matter jurisdiction over her appeal from the MSPB.  Second, she pled her way out of the Federal Circuit (Option 1.A).  And third, Punch missed the deadline to file in district court (Option 1.B.i).

1.

Let's start with the first consequence.  An employee dissatisfied with the MSPB's resolution of a mixed case may "petition the [EEOC] to consider the decision."  5 U.S.C. § 7702(b)(1).  That gives the EEOC 30 days to "determine whether to consider the decision."  *Id.* § 7702(b)(2).  If the EEOC chooses to consider the decision, it may concur or refer it back to the MSPB for reconsideration.  *Id.* § 7702(b)(3), (c).

Section 7702 sets clear limits on when—and in what instances—EEOC and MSPB actions may be scrutinized by the courts.  In relevant part, § 7702 makes an MSPB decision a "judicially reviewable action" on "the date of issuance if the employee . . . does not file a petition with the [EEOC]."  *Id.* § 7702(a)(3)(A). If the employee *does* petition the EEOC, the MSPB decision becomes a "judicially reviewable action" on "the date the [EEOC] determines not to consider the decision," *id.* § 7702(a)(3)(B), or when "the [EEOC] concurs . . . in the decision of the [MSPB]," *id.* § 7702(b)(5)(A).  We have held these limitations are jurisdictional.  *See Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998) (failure to exhaust the MSPB and EEOC review requirements in §§ 7702 and 7703 deprived the court of subject-matter jurisdiction); *Smith v. Potter*, 400 F. App'x 806, 812 (5th Cir. 2010) (failure to wait until there was a final administrative determination rendered employee's federal claim jurisdictionally defective).

Following the MSPB's rejection of her mixed case, Punch timely filed a petition with the EEOC on March 8, 2016.  The EEOC then had 30 days to decide whether to review the MSPB's disposition.  Rather than wait for the

No. 18-40580

EEOC to act, however, Punch purported to take her case to the Federal Circuit 28 days later, on April 5, 2016. This was fatal to her appeal. The MSPB's decision was not, at that time, a "judicially reviewable action" under § 7702. Under *Randel* and *Smith*, that deprived the Federal Circuit of subject-matter jurisdiction to consider Punch's appeal.

The parties have stipulated that the EEOC petition was a nullity. But stipulations cannot create subject-matter jurisdiction. *See, e.g., Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented. Subject-matter jurisdiction can never be waived or forfeited." (citation omitted)); *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("Notwithstanding the parties' agreement, we have an independent obligation to assess our own jurisdiction before exercising the judicial power of the United States."). Nor does it matter that the EEOC eventually created an otherwise-reviewable action when it concurred with the MSPB. *See Smith*, 400 F. App'x at 811 ("Where an employee has prematurely filed an action in . . . court, the issuance of a final decision by the agency before a . . . court can dismiss the claim does not cure the jurisdictional defect.").[5]

2.

In all events, Punch pled her way out of the Federal Circuit. She did so by attempting to bifurcate her discrimination and non-discrimination (CSRA)

---

[5] Neither party asks us to reconsider our decisions in *Randel* and *Smith* in light of *Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019). In *Fort Bend County*, the Supreme Court concluded that certain time limits for bringing a Title VII claim under 42 U.S.C. § 2000e were mandatory claims-processing rules and not jurisdictional ones. We need not reconsider whether § 7702 likewise supplies mere "preconditions to relief," *id.* at 1849, or instead supplies jurisdictional prerequisites for "judicially reviewable action," 5 U.S.C. § 7702(a)(3). Either way, § 7702 presents a roadblock to just one of the many routes Punch purported to take. For the reasons given below, those other roads also are now closed.

claims. When federal employees have discrimination and non-discrimination claims arising from "the same or related facts," every court of appeals to consider the question has prohibited bifurcation. *See Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009) ("If the employee pursues the mixed case in the Federal Circuit, then she abandons her discrimination claims . . . ."); *Chappell v. Chao*, 388 F.3d 1373, 1378 (11th Cir. 2004) ("Chappell waived his right to proceed on his discrimination action in district court when he elected to appeal his termination claim to the Federal Circuit, rather than bringing his related discrimination and termination claims in one forum, as required."); *Smith v. Horner*, 846 F.2d 1521, 1523 (D.C. Cir. 1988) ("[A]ppellant relinquished that cause of action [for discrimination] when he responded to the Federal Circuit's Clerk's letter [and chose to appeal under Option 1.A]."); *Williams v. Dep't of Army*, 715 F.2d 1485, 1490 (Fed. Cir. 1983) ("Congress did not direct or contemplate bifurcated review" of mixed cases under [5 U.S.C.] § 7702."); *cf. Tolbert v. United States*, 916 F.2d 245, 248 (5th Cir. 1990) ("[H]aving chosen to pursue administrative review of the Postal Service's decision [before the EEOC under Option 1.B.ii], Tolbert must exhaust that remedy [and cannot] abandon it in mid-course, and pursue a civil action instead [under Option 1.B.i].").

We agree with this unbroken line of authority. "[T]he issues of a mixed case are tied together for resolution at the same time . . . ." *Chappell*, 388 F.3d at 1378. Therefore, after the MSPB rejects a mixed case under Option 1, an employee who wants to pursue the mixed case must do so by taking the *entire* thing to district court (Option 1.B.i) or the EEOC (Option 1.B.ii). Or the employee can discard her discrimination claims and pursue only the CSRA claim in the Federal Circuit (Option 1.A). As all our sister courts have held, in no circumstance can the employee bifurcate or trifurcate her mixed case between these options. "We are always chary to create a circuit split."

13

No. 18-40580

*Gahagan v. United States Citizenship & Immigration Servs.*, 911 F.3d 298, 304 (5th Cir. 2018) (quotation omitted).

Punch petitioned for review in the Federal Circuit on April 5, 2016 (Option 1.A). Almost two weeks later, on April 18, she warranted to the Federal Circuit that she had not raised—and would not raise—any discrimination claims:

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

_____Johnetta Punch_____  v.  __National Aeronautics and Space Administration__

No. ____2016-1804____

**PETITIONER'S FED. CIR. R. 15(c) STATEMENT CONCERNING DISCRIMINATION**
**Please complete sections A, B, and C.**

**Section A:**

Check the statements below that apply to your case. Usually, it is one statement, but it may be more. Do not alter or add to any of the statements.

☒ (1) No claim of discrimination by reason of race, sex, age, national origin, or handicapped condition has been or will be made in this case.

---

But Punch had already raised her discrimination claims before petitioning for the Federal Circuit's review:

- On December 9, 2013, Punch filed her discrimination claims with NASA's ODEO (Option 2);

- On August 21, 2015, Punch appealed NASA ODEO's decision to EEOC; and

- On March 8, 2016, Punch appealed the MSPB's decision to EEOC (Option 1.B.ii).

Not only had she raised discrimination claims *before* going to the Federal Circuit—she continued to press them *after* purporting to waive them: One month after the purported waiver, on May 17, 2016, Punch changed lanes again and filed suit on her discrimination claims in federal district court.

We agree with the Federal Circuit's rejection of Punch's bifurcation strategy:

14

No. 18-40580

> The underlying nature of this appeal [from the MSPB decision] and Ms. Punch's district court complaint are not, as she asserts, "entirely separate actions"—far from it. In Count V of her [district court] complaint, "Termination On The Basis of Retaliation Under Title VII," Ms. Punch asserts she was removed from her position as retaliation for the filing of her EEO complaints that alleged race and sex discrimination. She also states as part of her request for injunctive relief that "reinstating Plaintiff to her position" is among the actions she is seeking from the court. These statements confirm rather than undermine the fact that Ms. Punch is continuing to seek the same relief she sought from the Board.

*Punch*, slip op. at 3. Without a valid waiver of her discrimination claims, Punch could not pursue her bifurcated CSRA claims before the Federal Circuit. *See, e.g., Tolbert*, 916 F.2d at 248 (holding an employee cannot abandon an option and switch to another "mid-course"); *Smith*, 846 F.2d at 1523 (noting "it makes little sense for the Federal Circuit to entertain only half of the claim"). The Federal Circuit's decision to that effect "best serves the CSRA's objective of creating an integrated scheme of review, which would be seriously undermined by parallel litigation regarding the same agency action." *Perry*, 137 S. Ct. at 1987 (quotation and alterations omitted).

3.

The final consequence of Punch's bifurcation strategy is that she's too late to litigate her claims in the federal district court. After the MSPB rejects a "mixed case" under Option 1, the employee has three potential paths:

- Abandon the discrimination claims and appeal only the CSRA claims to the Federal Circuit within **60 days**. *See* 5 U.S.C. § 7703(b)(1); *Perry*, 137 S. Ct. at 1981. (Option 1.A)

- File a "mixed case" complaint in federal district court within **30 days**. *See* 5 U.S.C. § 7703(b)(2). (Option 1.B.i)

- File a "mixed case" appeal before the EEOC within **30 days**. *See id.* § 7702(b)(1); 5 C.F.R. § 1201.157. (Option 1.B.ii)

Punch took no court action until **58 days** after receiving the MSPB's decision. At that point, she purported to drop her discrimination claims and

No. 18-40580

pursue only her CSRA claim before the Federal Circuit (Option 1.A). If Punch wanted to litigate her mixed case in federal district court, she should've chosen Option 1.B.i and filed her complaint within **30 days** of the MSPB's decision, or the EEOC's concurrence with that decision. *See* 5 U.S.C. § 7703(b)(2). Her failure to do so means she's time-barred from litigating in district court now.[6]

Punch concedes she's untimely, but she says § 7703(b)(2)'s time bar should be equitably tolled. The district court did not abuse its discretion in declining to do so. *See Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (noting we review equitable-tolling decisions for abuse of discretion). The MSPB told Punch in writing that any district court complaint must be filed within 30 days. Punch received that order. Then she made her choice with the assistance of counsel. That is not the stuff of equitable tolling. Because Punch's equitable-tolling argument fails in all events, we need not decide whether § 7703(b)(2) is subject to equitable tolling in the first place. *Compare, e.g.*, *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (holding that § 7703(b)(2)'s time bar is not jurisdictional and hence can be equitably tolled), *and Blaney v. United States*, 34 F.3d 509, 512–13 (7th Cir. 1994) (same), *and Nunnally v. MacCausland*, 996 F.2d 1, 4 (1st Cir. 1993) (per curiam) (same), *with Dean v. Veterans Admin. Reg'l Office*, 943 F.2d 667, 670 (6th Cir. 1991) (holding that § 7703(b)(2)'s time bar is jurisdictional and hence cannot be equitably tolled), *vacated*, 503 U.S. 902 (1992).

---

[6] The Federal Circuit's decision to transfer Punch's CSRA claims does not change that result. A federal court can transfer a case to a court "in which the action or appeal could have been brought *at the time it was filed.*" 28 U.S.C. § 1631 (emphasis added). At the time Punch filed her case—58 days after the MSPB's decision—it was too late to file in federal district court. For the same reason, we cannot transfer her CSRA case back to the Federal Circuit. At the time Punch filed her case, she steadfastly refused to waive her discrimination claims. And therefore, as explained in the preceding section, her case could not have been brought in the Federal Circuit either.

No. 18-40580

\* \* \*

The judgment of the district court is AFFIRMED.

No. 18-40580

APPENDIX

Chronology of Events

| | |
|---|---|
| August 7, 2013 | NASA terminates Punch. |
| September 5, 2013 | Punch appeals to the MSPB (Option 1). |
| December 9, 2013 | Punch files discrimination complaint with NASA's ODEO (Option 2). |
| April 9, 2015 | NASA's ODEO finds no discrimination (Option 2). |
| August 21, 2015 | Punch appeals the NASA ODEO decision to the EEOC (Option 2). |
| February 9, 2016 | MSPB affirms Punch's termination (Option 1). |
| March 8, 2016 | Punch appeals the MSPB decision to the EEOC (Option 1.B.ii). |
| April 5, 2016 | Punch petitions the Federal Circuit to review the MSPB's decision (Option 1.A). |
| April 18, 2016 | Punch purports to waive her discrimination claims in the Federal Circuit (Option 1.A). |
| May 17, 2016 | Punch challenges the NASA ODEO decision in district court (Option 2). |
| March 7, 2017 | The EEOC concurs with the MSPB decision (Option 1.B.ii). |
| April 26, 2017 | The Federal Circuit transfers the case to the district court (Option 1.B.i). |
| August 21, 2017 | The district court consolidates the two cases (Options 1.B.i and 2). |
| May 18, 2018 | The district court dismisses Punch's claims. |

18